The EDWARD A. SHERMAN
PUBLISHING COMPANY and
M. Catherine Callahan

v.

William R. GOLDBERG, in his capacity
as Judge of the Family Court of
Rhode Island.

No. 80–543–M.P.

Supreme Court of Rhode Island.

April 13, 1982.

Sheffield & Harvey, W. Ward Harvey, G. Quentin Anthony, Jr., Newport, for petitioners.

Dennis J. Roberts II, Atty. Gen., Stephen Lichatin III, Asst. Atty. Gen., Corcoran,

**1254**

Peckham & Hayes, P.C., Kathleen Managhan, Newport, for intervenors, David Boggs and Elizabeth Boggs.

## OPINION

MURRAY, Justice.

This is a petition for certiorari in which the Edward A. Sherman Publishing Company, publisher of the *Newport Daily News*, and M. Catherine Callahan, one of its reporters (petitioners), seek review of an order entered by a justice of the Family Court barring them from attending hearings on an adjudication then pending before the trial justice because the petitioners had published the name of the juvenile involved in the hearing in its newspaper. The order also barred the company and its reporters from attending any further hearings in the Family Court involving juveniles unless the company agreed in advance that it would not report or publish the name of the juveniles involved in such hearings. We granted the petition and issued the writ. *Edward A. Sherman Publishing Co. v. Goldberg*, R.I., 425 A.2d 89 (1981).

The parties have submitted this case for our consideration on an agreed statement of facts. The facts so stipulated are as follows. The Edward A. Sherman Publishing Company (company) owns and publishes the *Newport Daily News*, a daily newspaper circulated among the general public primarily in Newport County. M. Catherine Callahan (Callahan) is a reporter in the employ of the company.

On June 3, 1980, the *Newport Daily News* carried a story that reported that John M. Bric, the owner of a local liquor and grocery store, had been beaten with a hammer outside his home in Newport the previous evening. The story also related certain details of the attack on Bric and the fact that "[a] 16-year-old Newport boy, accompanied by

his father, [had] turned himself in to [the] Newport police" that morning. Some two weeks later, on June 18, 1980, the *Newport Daily News* printed another story reporting that Bric, the victim, had died at Newport Hospital the previous evening. The news account, written by someone other than petitioner Callahan, also stated that

> "[p]olice confirmed that the suspect [in the crime] was a 14-year-old male but would not release his name. *But sources said the suspect is Daniel Boggs of Everett Street.*" (Emphasis added.)

Subsequent news accounts carried by the newspaper concerning the case and the juvenile's arraignment [1] continued to name Daniel Boggs as the individual charged with Bric's murder.

On October 30, 1980, a hearing was commenced before Justice Goldberg in the Family Court in Newport on a complaint charging Boggs with Bric's murder. Prior to the start of the hearing the trial justice verbally ordered Callahan barred from the hearing and from all subsequent hearings in the case because, as the trial justice stated, the company had published Bogg's name as the juvenile involved in the case in the article in the June 18 edition of the *Newport Daily News*. The trial justice's verbal order was subsequently embodied in a written order and was entered on November 20, 1980, *nunc pro tunc* as of October 30, 1980. That order provided:

"1) The Edward A. Sherman Publishing Company, a Rhode Island corporation, and M. Catherine Callahan, a reporter in the employ of said Company, and every other reporter or agent of said Company are forbidden from attending any further hearings or proceedings in the above[-]entitled action from October 30, 1980 for the reasons among others:

[a.] That said Company in an article published on June 24, 1980 in the New-

---

1. A news story appearing in the June 24, 1980 edition of the *Newport Daily News* stated in part:

> "A 14-year-old Newport boy was arraigned yesterday in Family Court in the slaying of a Spring Street grocer. Judge William R. Goldberg set July 14 as the trial date.

> "The boy's guardian, Atty. Richard P. D'Addario, said the boy, Daniel Boggs, was charged with murdering John M. Bric, the owner of John T. Bric & Co., who died 15 days after a June 2 beating outside his home * * *."

port Daily News printed the name of Daniel A. Boggs in said article as the minor person involved in the present trial and proceeding in violation of a previous understanding with the Family Court that said Company and other public newspaper publishing companies in the State would be permitted to attend Family Court hearings involving minors with the express understanding by said newspaper companies that the names of said minors would not be printed in published reportings of said trials and hearings.

[b.] That in any event to allow reporters from said Company to attend and report said trial of Boggs and other hearings involving minors is in violation of the provisions of Section 14–1–30 of the Revised General Laws of 1956.[2]

2) That the said Company and its reporters are hereby barred from attending any further hearings of the Family Court involving minors in other trials or proceedings unless said Company shall agree before any attendance that it will not report and publish the name of any minor respondent or defendant involved as a party in any such trials or proceedings."

Although the reporters from the *Newport Daily News* were barred from attending the Boggs hearing, the reporters from the *Providence Journal* were permitted to attend the hearings and they reported on and published articles on all sessions of the hearing but did not specifically mention Bogg's name in the articles.

2. General Laws 1956 (1969 Reenactment) § 14–1–30 provides:
   "In the hearing of any case [in the Family Court involving a juvenile] the general public shall be excluded; only an attorney, or attorneys selected by the parents or guardian of a child to represent such child, may attend, and only such other persons shall be admitted as have a direct interest in the case, and as the justice may direct. All cases involving children shall be heard separately and apart from the trial of cases against adults."

3. In 1944, Chief Judge Francis J. McCabe was appointed and confirmed as chief judge of the then-existing Juvenile Court. He served as chief judge of that court from the time of its establishment in 1944 until its termination and the creation of the present Family Court by the Legislature with its enactment of P.L.1961, ch.

At the conclusion of the hearing held over the course of several days, the trial justice found Boggs "guilty of first-degree murder" and committed him to the care, custody, and control of the superintendent of the Rhode Island Training School for Youth until such time as he reaches the age of twenty-one.

The parties here agree that the trial justice's order barring petitioners from the Boggs hearing was based, in part, upon the fact that a written agreement allegedly had been entered into some twenty years earlier between and among all the publishers of newspapers published in this state and the late Chief Judge Francis J. McCabe of the Family Court.[3]

According to the parties, the agreement[4] provided, *inter alia*, that newspaper reporters would be permitted to attend future hearings and trials involving juveniles on the condition that the newspapers not publish the names of the juveniles.

Finally, the parties stipulate that petitioners learned of the fact that Daniel Boggs was the juvenile who had been charged with Bric's murder well before the date Boggs's trial commenced in the Family Court and that petitioners obtained this information from sources other than court records or court personnel.

In their petition for certiorari,[5] petitioners sought the following relief: (1) that the

73, § 1. McCabe served as chief judge of the Family Court from June 1961 to his death in 1969.

4. We attach no legal significance to this purported agreement. Its present existence has not been established, and it would not, in any event, add anything to the statutory authority of the Family Court.

5. In granting the petition for certiorari, we also granted the motion of David Boggs and Elizabeth Boggs, the parents of Daniel A. Boggs, to intervene as petitioners in this matter. *Edward A. Sherman Publishing Co. v. Goldberg*, R.I., 425 A.2d 89 (1981). They subsequently submitted a brief for our consideration and participated at oral argument. Following oral argument in this matter, we also granted the American Civil Liberties Union's motion to file an

trial justice's order be declared null and void as violating the First, Sixth and Fourteenth Amendments to the United States Constitution and article I, sections 10 and 20 of the Rhode Island Constitution; (2) that G.L. 1956 (1969 Reenactment) § 14–1–30 be declared null and void to the extent that it bars members of the press from attending Family Court proceedings as it is in conflict with the above-cited constitutional provisions; (3) that the trial justice be directed to permit petitioner Callahan and other representatives of petitioner company to attend future hearings or proceedings involving Boggs for the purpose of fully reporting on such proceedings and publishing the name of the juvenile; and (4) that the trial justice be directed to permit petitioner Callahan and other representatives of petitioner company to attend future hearings in other proceedings in the Family Court involving juveniles other than Boggs and to permit petitioners to report on any such proceeding and to publish the names of the juveniles involved.

In their brief and at oral argument, petitioners raised several grounds upon which they seek reversal of the trial justice's order.

■ Initially, petitioners challenge the constitutionality of that portion of the trial justice's order barring them from attending the Boggs hearing because they had previously published the juvenile's name.[6] They argue that the *Newport Daily News* obtained knowledge of Bogg's name "in a perfectly lawful way outside of court proceedings"

more than four months before the start of the juvenile's trial in the Family Court.

They argue that if the major purpose of § 14–1–30 is to preserve the anonymity of juvenile offenders appearing before the Family Court by prohibiting press from the hearings, the statute failed to accomplish the desired result in the instant case. They assert that the fact that Boggs was the individual involved in the murder of Bric was well known in the community. Once the name of a juvenile is obtained by a newspaper and published, as it was in the instant case, § 14–1–30 serves no purpose and its application to bar petitioners from attending the hearing is arbitrary and completely unconstitutional. The petitioners, citing *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97, 99 S.Ct. 2667, 61 L.Ed.2d 399 (1979), argue that the trial justice's imposition of the sanction of barring them from attendance at the Boggs hearing for publishing the name of a juvenile derived in a lawful manner must be struck down as unconstitutional.

The petitioners also contest the second portion of the trial justice's order prohibiting them from attending all future hearings in the Family Court involving juveniles unless they agree in advance not to publish the names of juveniles involved. They claim that this amounts to a prior restraint on publication and as such, carries a heavy presumption of unconstitutionality. The petitioners assert that the state's interest in protecting the anonymity of juveniles appearing before the Family Court is not suf-

amicus curiae brief in this matter. This brief, however, was never filed.

**6.** The petitioners in their brief concede that the portion of the trial justice's order barring them from the Boggs trial is now moot, but they nonetheless urge this court to consider all portions of the order because of the "overriding public interest" involved.

As a general rule, we only consider cases involving issues in dispute and we refrain from addressing moot, abstract, academic, or hypothetical questions. *Morris v. D'Amario*, R.I., 416 A.2d 137, 139 (1980); *Mello v. Superior Court*, 117 R.I. 578, 580–81, 370 A.2d 1262, 1263–64 (1977). *See, e.g., Perry v. Petit*, 116 R.I. 89, 352 A.2d 396 (1976); *Ramsdell v. Kiely*,

111 R.I. 1, 298 A.2d 144 (1973); *Town of Scituate v. Scituate Teachers' Ass'n*, 110 R.I. 679, 296 A.2d 466 (1972). Although moot, there are questions of extreme public interest and importance which are capable of repetition but which are likely to evade review. When faced with such questions we shall, under ordinary circumstances, depart from our usual rule and shall consider the issue properly before us for our decision. *Morris v. D'Amario*, R.I., 416 A.2d at 139; *Mello v. Superior Court*, 117 R.I. at 581, 370 A.2d at 1263–64; *Lemoine v. Martineau*, 115 R.I. 233, 236 n.1, 342 A.2d 616, 619 n.1 (1975); *School Comm. of Westerly v. Westerly Teachers Ass'n*, 111 R.I. 96, 98, 299 A.2d 441, 442–43 (1973).

ficient to overcome this presumption. The petitioners also claim that § 14–1–30 does not bar the press from juvenile proceedings because the exclusion of "the general public" in similar statutes has been interpreted not to include the press. They argue that if § 14–1–30 is construed as barring the press, the statute is unconstitutional. Finally, petitioners assert that allowing another newspaper company to attend the Boggs proceedings amounts to discrimination in violation of the equal-protection clause of the Fourteenth Amendment.[7]

I

■ In *Oklahoma Publishing Co. v. District Court*, 430 U.S. 308, 97 S.Ct. 1045, 51 L.Ed.2d 355 (1977), the United States Supreme Court held that the judiciary cannot prohibit the publication of a juvenile's name and picture when that information has been lawfully obtained by the media. In that case, an eleven-year-old boy was charged by juvenile authorities with second-degree murder. An Oklahoma statute provided that juvenile proceedings be closed to the public in the absence of an express order of the trial judge to the contrary. Despite the fact that no such order was entered in the case, members of the media were present at the pretrial hearing. The media learned the juvenile's name and obtained a picture of him. Thereafter, the juvenile was arraigned at a "closed" hearing at which the trial judge entered a pretrial order enjoining members of the news media from "publishing, broadcasting, or disseminating, in any manner, the name or picture of [the juvenile]." Because the prohibited information had been obtained lawfully at the open-court hearing, the Court held that the judge's pretrial order violated the First Amendment right of freedom of the press. The Court held that once truthful information was "publicly revealed" or "in the public domain," a court could not constitutionally restrain its dissemination.

■ Later, in *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97, 99 S.Ct. 2667, 61 L.Ed.2d 399 (1979), the Court held that the media cannot be punished for publishing a juvenile's name that had been lawfully obtained. The media in *Smith* had learned the juvenile's name through its own investigation—by talking to eyewitnesses and monitoring the police radio. Several publishers were indicted for violating a West Virginia statute that made it a crime to publish the name of a juvenile without written permission from the court to do so. The Supreme Court held that the state could not punish those responsible for the publication of lawfully obtained information absent a state interest "of the highest order." The Court noted:

"Here respondents relied upon routine newspaper reporting techniques to ascertain the identity of the alleged assailant. A free press cannot be made to rely solely upon the sufferance of government to supply it with information. If the information is lawfully obtained, as it was here, the state may not punish its publication except when necessary to further an interest more substantial than is present here." [Citations omitted.] *Id.* at 103–04, 99 S.Ct. at 2671, 61 L.Ed.2d at 405.

■ The foregoing analysis clearly indicates that the order of the trial justice in the instant case was invalid. Barring petitioners from the proceedings involving Boggs amounted to a penalty for their having published lawfully obtained information. Further, that portion of the order conditioning petitioners' attendance at other juvenile proceedings upon their agreeing in advance not to publish the name of the juvenile is impermissibly overbroad, as well as an unconstitutional prior restraint on the press.

II

■ This finding of invalidity does not, however, extend to § 14–1–30. Contrary to

---

7. The petitioners also claim that the agreement between the Family Court and the press constitutes a prior restraint and must be overturned.

Because we do not recognize this agreement (*see* footnote 4), we shall not deal with petitioners' contention.

petitioners' assertions, the fact that members of the press could be excluded under this provision does not alone render it unconstitutional.

■■■ The right of access to criminal trials, as established in *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), does not apply to juvenile proceedings. The principle of an open trial has as its goals the protection of a defendant against possible prosecutorial or judicial abuse.[8] The interests of the juvenile, however, are most often best served by anonymity and confidentiality.

This issue was recently addressed by the Vermont Supreme Court in *In re J. S.*, Vt., 438 A.2d 1125 (1981). J.S. was a fifteen-year-old charged as a juvenile delinquent for his role in the assault of two twelve-year-old girls and the resulting death of one of the victims. The juvenile appealed to the Vermont Supreme Court from a lower court order allowing the public and the press to attend the proceedings to adjudge him a delinquent. The order also held that Vt.Stat.Ann. tit. 33, § 651(c), the Vermont juvenile shield law that mandates closure of juvenile proceedings to the public and the news media, violated the First Amendment.

The Vermont Supreme Court quashed the order, holding that confidentiality of juvenile proceedings was not in conflict with the First Amendment. The court further noted that the right of access established in *Richmond Newspapers, Inc. v. Virginia, supra*, applied only to adult criminal cases.

The court's holding in *In re J. S., supra*, is well supported by the opinions of the United States Supreme Court. The right of a state to protect the confidentiality of juvenile proceedings was recognized in *In Re*

*Gault*, 387 U.S. 1, 25, 87 S.Ct. 1428, 1442, 18 L.Ed.2d 527, 545 (1967). The Court further noted in *Davis v. Alaska*, 415 U.S. 308, 319, 94 S.Ct. 1105, 1112, 39 L.Ed.2d 347, 355 (1974): "We do not and need not challenge the State's interest as a matter of its own policy in the administration of criminal justice to seek to preserve the anonymity of a juvenile offender."

The Rhode Island shield law, G.L.1956 (1969 Reenactment) § 14–1–30, which excludes from juvenile proceedings all but those with a direct interest in the case, is fully consonant with the above-cited cases. It is also compatible with constitutional free-press guarantees.

The Supreme Court has never intimated that the media have a First Amendment right of access to government information or to sources of information within the government's control. For instance, in *Pell v. Procunier*, 417 U.S. 817, 834, 94 S.Ct. 2800, 2810, 41 L.Ed.2d 495, 508 (1974), the Court stated: "The First and Fourteenth Amendments bar government from interfering in any way with a free press. The Constitution does not, however, require government to accord the press special access to information not shared by members of the public generally." (Footnote omitted.) *See also Houchins v. KQED, Inc.*, 438 U.S. 1, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978); *Saxbe v. Washington Post Co.*, 417 U.S. 843, 94 S.Ct. 2811, 41 L.Ed.2d 514 (1974).

■■■ The press enjoys no greater right of access to juvenile proceedings than does the general public. Excluding the press from the category of those "with a direct interest" in these proceedings is, therefore, clearly permissible.[9]

---

**8.** Even in criminal cases the right to a public trial "is not a 'limitless imperative' of a criminal defendant." *State v. Santos*, R.I., 413 A.2d 58, 62 (1980) (*quoting United States ex rel. Smallwood v. LaValle*, 377 F.Supp. 1148, 1151 (E.D.N.Y.1974)).

**9.** The Supreme Court of California has held in *Brian W. v. The Superior Court of Los Angeles County*, 20 Cal.3d 618, 574 P.2d 788, 143 Cal. Rptr. 717 (1978), that the press does have a

more direct interest than the general public in juvenile cases. We disagree. We believe that, in the area of juvenile proceedings, United States Supreme Court opinions and public policy as determined by our Legislature show a compelling interest in granting the press no greater access to juvenile proceedings than the general public has. *See also State v. McCloud*, 36 Conn.Supp. 352, 422 A.2d 327 (1980); *In re J. S.*, Vt., 438 A.2d 1125 (1981).

## 1259

### III

 The principles enunciated by the Supreme Court in the above-cited cases provide sound guidance for dealing with situations in which the media have published, or in some other manner made public, the name of a juvenile involved in a proceeding in the Family Court; or when, prior to the commencement of the proceeding, the media have made known to the trial justice their intention to make such name public. In these instances, the trial justice should, at the earliest possible opportunity, conduct a hearing at which representatives of the media and of the state or other local prosecuting authority shall be allowed to place on the record such evidence as the parties deem necessary concerning the source of information regarding the juvenile's identity and the manner in which that information was obtained. If, at the conclusion of such hearing, the trial justice shall determine from the evidence that the media have learned the name of the juvenile from a judicial source or sources or that the media have learned the name of the juvenile as a result of its presence at a proceeding in the Family Court, the trial justice shall order that the media shall not report, publish, or otherwise make public the name of that juvenile. In this situation, the trial justice may also order that the media not be permitted to attend any proceedings in the Family Court involving that juvenile or may impose the additional sanction of exclusion from other juvenile proceedings.

If, however, the trial justice shall determine after the hearing that the media have learned the name of the juvenile from non-judicial sources, as a result of their own investigations or under similar circumstances, the trial justice shall permit the representatives of the media to report, publish, or make public the name of such juvenile and shall permit the representatives of the media to attend the hearing or proceeding in the Family Court in accordance with this opinion.

The determination made by the trial justice regarding the source of the media's knowledge of the juvenile's name shall be made upon the facts and circumstances of each case. Such a decision and the sanctions imposed in such matters shall rest in the sound judicial discretion of the trial justice.

For the reasons stated, the petition for certiorari is granted in part and denied in part. The order entered below is vacated, and the papers in this case are remanded to the Family Court with our decision endorsed thereon.