ASSOCIATED PRESS, Watertown Public Opinion Co., Sioux Falls Newspapers, Inc., Sorenson Broadcasting Co., SDTV, Inc., and Kelo Land News, Plaintiffs and Applicants,

v.

The Honorable Dale E. BRADSHAW, Circuit Judge, Third Judicial Circuit, South Dakota, Defendant.

No. 15850.

Supreme Court of South Dakota.

Argued July 15, 1987.

Decided Aug. 14, 1987.

Jon Arneson, Sioux Falls, for plaintiffs and applicants Associated Press, Watertown Public Opinion, Sioux Falls Newspapers, Inc., Sorenson Broadcasting Co., and SDTV, Inc.

Timothy M. Gebhart of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for plaintiff Kelo Land News.

Lawrence L. Piersol of Davenport, Evans, Hurwitz & Smith, Sioux Falls, on the brief.

John D. Knight of Turbak Law Offices, Watertown, for P.R.

MILLER, Justice.

This is an original proceeding wherein the plaintiffs (Media) seek a writ of mandamus compelling a circuit court judge to admit them to certain juvenile hearings and to remove any restraint on publishing or broadcasting certain lawfully obtained material. For reasons stated in this opinion, we will grant the writ of mandamus.

## FACTS

Juvenile delinquency proceedings were commenced in March 1987 against P.R., generally alleging that she was responsible for the death of her infant son C.R., who died on or about March 9, 1987. (P.R. attained majority approximately six weeks later when she became eighteen years of age.)

On March 12, 1987, the Codington County, South Dakota, State's Attorney filed a petition seeking to have the juvenile proceedings against P.R. transferred to adult court so that she could face a three-count charge of murder in the first degree, manslaughter in the second degree, and abuse of child.[1] A hearing on this transfer petition was set for June 26, 1987.

On April 23, 1987, P.R.'s attorney filed a motion to exclude Media from all further proceedings; Media opposed this motion. (Although various Media representatives had voluntarily agreed to withhold P.R.'s name, apparently some did publish or broadcast the name of her deceased son.) Circuit Judge Dale Bradshaw (the trial judge), who is presiding over the juvenile proceedings, conducted a hearing on the closure motion on May 14, 1987. Although no evidence was presented to the trial judge, he heard argument of counsel (which apparently has not been transcribed, since no transcript is in the record) and entered findings of fact, conclusions of law, and an order closing all future juvenile proceedings to Media and the public. That decision is under review in this proceeding. We issued an alternative writ of mandamus on June 25, 1987, and heard argument by counsel for Media and P.R. at a hearing on July 15, 1987. The June 26, 1987, transfer hearing has been stayed pending this opinion.

## DECISION

■ Despite the interesting and academic argument of counsel to the contrary, we conclude that this litigation does not present any new or compelling constitutional questions. We have previously held and we now reiterate that the Media has no absolute *constitutional* right of access to any phase of a criminal trial. *Rapid City Journal v. Circuit Court*, 283 N.W.2d 563 (S.D.1979). The United States Supreme Court holds likewise. *Gannett Co. v. DePasquale*, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); *Press-Enterprise Co. v. Superior Court*, 478 U.S. ——, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986). It is clear that Media does have a qualified right of access under which courts must balance First Amendment and Sixth Amendment rights. *Gannett, supra; Globe, supra.*

■ Similarly, there is no absolute right of access to juvenile hearings, which have been traditionally closed. *In re J.S.*, 140 Vt. 458, 438 A.2d 1125 (1981), *citing Richmond Newspapers, supra* and *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97, 99 S.Ct. 2667, 61 L.Ed.2d 399 (1979) (all fifty states have some sort of shield law to promote confidentiality).

---

1. SDCL 26–8–22.7 authorizes the circuit court to hold a transfer hearing to determine whether the child should be held for criminal proceedings in an appropriate court of competent jurisdiction. SDCL 26–11–4 sets forth the factors which the court must consider in determining whether the child should be transferred. .

In this state, Media's right of access to juvenile proceedings stems from a statute which was adopted by our legislature in 1968. That statute, SDCL 26–8–32, provides:

Upon the trial or hearing of cases arising under this chapter, the court shall admit the general public to the hearing room, except when the child, his parents or their attorney request that the hearing be private, and *in that event the court may admit only such persons as may have a direct interest in the case, witnesses, officers of the court and news media representatives.* Summons may be issued requiring the appearance of any other person whose presence the court deems necessary. (Emphasis supplied.)

Media argues that the specific language of SDCL 26–8–32 affords them an unqualified right of access to all juvenile proceedings. We disagree. This statute provides only a permissive standard. The juvenile court judge may allow the press into closed juvenile proceedings, but he is not required to do so. The restricted right of access is consonant with the traditional philosophy of the juvenile court system. "Juvenile proceedings and sentences, with the exception of transfer hearings, are conducted solely in the best interests of the child. ... Moreover, the treatment of a juvenile is informal, ... rehabilitative, ... as opposed to ... adults." *State v. Lohnes*, 324 N.W.2d 409, 414 (S.D.1982) (citations omitted), *cert. denied* 459 U.S. 1226, 103 S.Ct. 1232, 75 L.Ed.2d 466 (1983), *overruled on other grounds, State v. Waff*, 373 N.W.2d 18 (S.D.1985). Although the discretion to close a juvenile hearing is based on the State's interest in preserving the juvenile offender's anonymity, such an interest is not sufficiently compelling to support closure absent a hearing on the issue. In this case, the trial judge did hold a hearing on the requested closure.

A literal reading of SDCL 26–8–32 indicates that initially the general public (including Media) is to be afforded access to juvenile court proceedings. Media claims, by virtue of the wording of the statute, that the judge *must* allow all enumerated persons access and since "news media representatives" are specifically enumerated, their presence must be allowed. We find this contention to be without merit.

Initially, it is a well-settled, general rule that the press has the same right of access as the general public. However, the press' rights are no greater than those possessed by the public. *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974); *Saxbe v. Washington Post Co.*, 417 U.S. 843, 94 S.Ct. 2811, 41 L.Ed.2d 514 (1974).

SDCL 26–8–32 reads that "the court *may* admit" certain categories of persons. By the language used (i.e., may), our legislature gave judges the discretion to admit one, all, or a combination of the enumerated parties to a juvenile court hearing. To hold otherwise would give the press greater rights than that of the general public.

■ Therefore, the issue is whether the trial judge was clearly erroneous[2] and abused his discretion in not allowing Media representatives a qualified right of access in this case. This qualified right of access requires balancing the First Amendment rights of the public, the press and the defendant with the defendant's Sixth Amendment right to a fair trial, together with the State's interests in preserving the juvenile offender's anonymity and general protection over juveniles. It is this balancing of rights and interests which requires the exercise of discretion on the part of the trial court.

Once a request for closure has been made, the trial court must assure that the interests of all parties, including the juvenile, the Media, the State, and the court, are protected. All parties must be afforded notice and a hearing before the trial court makes a determination on the closure issue. The issue of closure must be resolved on a case-by-case basis after consideration of all pertinent factors and all alternatives to closure. *Globe, supra.* Fur-

---

2. *Wiggins v. Shewmake*, 374 N.W.2d 111 (S.D. 1985); *McFarland v. Northwest Realty Co.*, 362 N.W.2d 98 (S.D.1985); *Dougherty v. Beckman*, 347 N.W.2d 587 (S.D.1984).

thermore, the trial court should make findings of fact and conclusions of law supporting its decision, for appellate review purposes.

The trial judge entered findings of fact and conclusions of law, however, there was no evidence in the record to support them. Several of the findings are undisputed facts easily gleaned from the written record (e.g., P.R.'s age, the procedural history of the juvenile proceedings, etc.). However, other findings are totally without any evidentiary support (e.g., the circulation and broadcast area of plaintiffs) and others are in reality conclusions of law (e.g., that the best interests of P.R. would be served by closure; that the juvenile court can best deal with, protect and care for P.R. by conducting further juvenile proceedings in privacy; and that the concern of the juvenile court, with the care, needs and protection of P.R. and with the rehabilitation and restoration to useful citizenship would best be served by conducting the proceedings privately).

■ In the future, before ordering closure, a trial court should consider (1) the nature and extent of press coverage, including the circulation and geographic distribution; (2) whether the coverage prior to the closure hearing has been excessive or sensational; (3) whether the minor's name has been released to the public; (4) whether there are alternative measures to closure; and (5) whether the proceedings closed to the public and press will be temporary. This list of factors is not intended to be exclusive.

■ Once evidence regarding these factors has been elicited, the competing interests of the confidentiality and anonymity of a juvenile court proceeding must be balanced against Media's rights under the First Amendment.[3] Additionally, the court must consider the juvenile's right to a fair trial under the Sixth Amendment. *Gannett, supra; Rapid City Journal, supra.* "The First Amendment right of access cannot be overcome by the conclusory assertion that the publicity might deprive"

the juvenile of his rights or protections. *Press Enterprise Co., supra,* 478 U.S. at ——, 106 S.Ct. at 2744, 92 L.Ed.2d at 14. Closure of juvenile proceedings should not occur unless specific supportive findings are made which demonstrate that closure is essential to preserve higher values and the order must be narrowly tailored to serve that interest. *Id.*

Applying the foregoing factors to these unsupported findings, we conclude that they are clearly erroneous and an abuse of discretion. In fairness to the trial judge, it must be remembered that this is a case of first impression with respect to juvenile proceedings in South Dakota and he has not had the benefit of appellate court guidance. He should not be criticized for a good faith attempt to resolve a highly technical and emotional legal issue.

## PRIOR RESTRAINT ON PUBLICATION

Media claim that the trial judge orally prohibited any publication of lawfully obtained information, to-wit: P.R.'s name. As such, Media claim that this action would be a prior restraint which violates the First Amendment.

We find nothing in the record to indicate that the trial judge has specifically restrained the publication of any lawfully obtained material. (In fact, counsel for Media admitted at oral argument before this court that their clients voluntarily withheld publishing/broadcasting P.R.'s name because of "ethical" considerations.) Apparently the trial judge had reminded Media of the provisions of SDCL 26–8–34, which says:

The name, picture, place of residence, or identity of any child, parent, guardian, other custodian, or any person appearing as a witness in proceedings under this chapter shall not be published or broadcast in any news media, nor given any other publicity, unless for good cause it is specifically permitted by order of the court.

---

**3.** *See* excellent discussion of First Amendment issues in juvenile, as compared to adult, criminal proceedings in *In re J.S.,* 140 Vt. 458, 438 A.2d 1125, 1128 (1981).

In any event, our holding on the access issue in this case moots this issue,[4] and we express no opinion on the claimed invalidity of SDCL 26–8–34.

Normally, we would remand this case to the trial judge to reconsider the motion in light of this opinion. Because of the unique facts and circumstances present here, we have concluded to grant the writ of mandamus directing the trial judge to allow Media to attend further hearings. Nothing in this decision or the resultant writ of mandamus is intended to otherwise limit the trial court, in the exercise of its discretion, from excluding Media from those portions of such hearings which would prejudice the juvenile's Sixth Amendment right to a fair trial, so long as the appropriate balancing is made and supported findings are entered consistent with this opinion. The writ will be issued accordingly.

All the Justices concur.

4. Media's application on its face may moot this issue. After complaining and alleging that Judge Bradshaw admonished them to comply with SDCL 26–8–34, the application goes on to state and allege that they "were not inclined to disclose the identity of (P.R.) in any event and had even agreed to use generic references in their coverage of proceedings to which they had access."