769 P.2d 844 (1989)
In the Matter of N.H.B., a minor.
Appeal of KEARNS-TRIBUNE CORPORATION, Publisher of the Salt Lake Tribune, Petitioner and Appellant.
No. 880109-CA.
Court of Appeals of Utah.
February 22, 1989.
*845 D. Miles Holman, Michael Patrick O'Brien, Salt Lake City, for petitioner and appellant.
David L. Wilkinson, Carlie Christensen, Salt Lake City, for State of Utah.
F. Walter Bugden, Jr., Salt Lake City, for N.H.B.
Before GARFF, DAVIDSON and GREENWOOD, JJ.
GREENWOOD, Judge:
Kearns-Tribune Corporation appeals the juvenile court's order excluding the press from attending a juvenile court hearing on a motion to recall jurisdiction. Kearns-Tribune asserts that juvenile court proceedings should be presumptively open to the press and public, and that the juvenile court erred in closing the hearing without entering specific findings that closure was essential to preserve higher values and narrowly tailoring its closure order to serve those values. We affirm.
N.H.B., a juvenile, was charged in Fifth Circuit Court with aggravated kidnapping and attempted homicide. N.H.B.'s attorney filed a motion to recall jurisdiction to the juvenile court, and Kearns-Tribune intervened to oppose closure of the recall hearing. The juvenile court allowed Kearns-Tribune to intervene and held a hearing on the petition to open the recall hearing to the public and media. None of the parties presented witness testimony or other evidence during the hearing.
Subsequently, the juvenile court denied the motion to open the recall hearing, but *846 stated that announcement of the court's decision on the motion to recall would be open to the press. Several days later, the court issued a memorandum decision which first referred to Utah Code Ann. § 78-3a-33 (1987), requiring closure of juvenile court hearings to the press and public, except where, in the discretion of the judge, the media is permitted. The decision stated that juvenile court hearings are presumed closed and confidential, and juveniles and their families have a reasonable expectation that the hearings will be closed. The court noted that, generally, juvenile court hearings are closed due to their special nature and concerns regarding a juvenile's privacy and confidentiality. In this particular case, the court found no compelling reason why N.H.B. should have any lesser right to privacy than other parties in similar matters. The memorandum decision also noted that in recall hearings, the accused juvenile is presumed to have committed the offenses. Thus, abundant testimony regarding the issues and the offenses would be presented and bias or prejudice might result if those matters were reported prior to trial. The court found that the hearing should be closed because the very issue before the court was whether the minor should remain in the juvenile system and be afforded the protections of the juvenile court. Thus, the juvenile should be provided those protections in the recall hearing. Finally, the court stated that the juvenile and his family were entitled to a closed hearing because sensitive psychological and mental information would be revealed regarding the juvenile. Kearns-Tribune filed this appeal contesting the court's closure of the recall hearing.

I. STANDING
Preliminarily, we must determine whether Kearns-Tribune has standing to challenge the juvenile court's closure of the recall hearing. Members of the media have standing to appeal orders purporting to restrain the media's conduct in cases where the media has been given actual notice of the order. KUTV, Inc. v. Conder, 668 P.2d 513, 517 (Utah 1983). Kearns-Tribune received actual notice of the closure order which denied it access to the recall hearing. Under these circumstances, Kearns-Tribune has standing to contest the closure order.

II. UNITED STATES CONSTITUTION
We next address Kearns-Tribune's assertion that under the first amendment of the United States Constitution, the press and the public have a right of access to juvenile court proceedings. Kearns-Tribune claims that juvenile court proceedings should be presumptively open and may be closed only if the court articulates specific findings which demonstrate that closure is essential to preserve higher values, that no less restrictive alternatives are viable, and that the closure order is narrowly tailored to serve those values.
The United States Supreme Court has clearly articulated that the press and the public have a right of access to criminal trials implicit under the freedom of the press provision of the first amendment. Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 581, 100 S.Ct. 2814, 2829, 65 L.Ed.2d 973 (1980); Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 603, 102 S.Ct. 2613, 2618, 73 L.Ed.2d 248 (1982). In Richmond, the Court traced the long historical tradition of public criminal trials preceding adoption of the Bill of Rights, and noted the public policy interests promoted by that tradition. Richmond, 448 U.S. at 570-71, 100 S.Ct. at 2823-24. Open trials ensure fairness, and promote public support for both the process and its results. Id. at 571-72, 100 S.Ct. at 2824-25. Although members of the public may not attend criminal trials in large numbers, the media acts as the public's surrogate in attending such proceedings and reporting to the public, thus educating the public. Id. at 573, 100 S.Ct. at 2825. Further, "[p]ublic scrutiny of a criminal trial enhances the quality and safeguards the integrity of the factfinding process, with benefits to both the defendant and to society as a whole. Moreover, public access to the criminal trial fosters an appearance of fairness, thereby heightening public respect for the judicial *847 process." Globe, 457 U.S. at 606, 102 S.Ct. at 2619. (footnotes omitted). The first amendment was intended to promulgate free discussion of governmental affairs, and access to criminal trials helps to "ensure that the individual citizen can effectively participate in and contribute to our republican system of self-government." Id. at 604, 102 S.Ct. at 2619.
The first amendment right of public access was extended to preliminary hearings in Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (Press-Enterprise II), where the Court observed that in determining whether a particular proceeding is presumptively open, the Court examines whether the place and process have historically been open to the press and public and whether public access plays a significant role in the functioning of the process. Id. 106 S.Ct. at 2740-41.
The right of public and press access is not absolute, however, and may be denied if it is "[s]hown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." Globe, 457 U.S. at 606-07, 102 S.Ct. at 2620. For those proceedings found to be presumptively open, closure cannot be ordered "unless specific, on the record findings are made demonstrating that `closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" Press-Enterprise II, 106 S.Ct. at 2743 (quoting Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1984) (Press-Enterprise I)).
Although criminal trials and preliminary proceedings are presumptively open to the public, the United States Supreme Court has not determined whether juvenile court proceedings likewise should be presumed open.[1] However, the Court has noted that historically there have been wide differences between procedural rights available for adults in the criminal law system and those provided juveniles in juvenile court proceedings. In re Gault, 387 U.S. 1, 14, 87 S.Ct. 1428, 1436, 18 L.Ed.2d 527 (1967); Kent v. United States, 383 U.S. 541, 554, 86 S.Ct. 1045, 1053, 16 L.Ed.2d 84 (1966). In Kent, the Court stated that
The Juvenile Court is vested with "original and exclusive jurisdiction" of the child. This jurisdiction confers special rights and immunities. He is, as specified by the statute, shielded from publicity. He may be confined, but with rare exceptions he may not be jailed along with adults. He may be detained, but only until he is 21 years of age... . The child is protected against consequences of adult conviction such as loss of civil rights, the use of adjudication against him in subsequent proceedings, and disqualification for public employment.
The net, therefore, is that petitioner  then a boy of 16  was by statute entitled to certain procedures and benefits as a consequence of his statutory right to the "exclusive" jurisdiction of the Juvenile Court.
Kent, 383 U.S. at 556-57, 86 S.Ct. at 1055 (citations omitted) (footnotes omitted) (emphasis added). In Gault, the Court held that juveniles were entitled to certain basic due process rights, but recognized the historical confidentiality of juvenile proceedings and the values derived from such confidentiality. Gault, 387 U.S. at 24-25, 87 S.Ct. at 1441-1442. The Court noted that "there is no reason why, consistently with due process, a State cannot continue if it deems it appropriate, to provide and to improve provision for the confidentiality of records of police contacts and court action relating to juveniles." Id. at 25, 87 S.Ct. at 1442.
The Court has also stated that juvenile proceedings are intended to "`preserv[e] and promot[e] the welfare of the child' which makes a juvenile proceeding fundamentally different from an adult criminal *848 trial." Schall v. Martin, 467 U.S. 253, 263, 104 S.Ct. 2403, 2409, 81 L.Ed.2d 207 (1984) (quoting Santosky v. Kramer, 455 U.S. 745, 766, 102 S.Ct. 1388, 1401, 71 L.Ed.2d 599 (1982) (citation omitted)). Further, the Court has recognized that, unlike the historic presumption of openness in criminal proceedings, "all 50 states have statutes that provide in some way for confidentiality" of juvenile proceedings. Smith v. Daily Mail Publishing Co., 443 U.S. 97, 105, 99 S.Ct. 2667, 2671, 61 L.Ed.2d 399 (1979). In Daily Mail, the Court concluded that a statute which prohibited the truthful publication of the names of juvenile offenders without court permission was unconstitutional as a prior restraint of speech. Justice Rehnquist, concurring in Daily Mail, stated:
It is a hallmark of our juvenile justice system in the United States that virtually from its inception at the end of the last century its proceedings have been conducted outside of the public's full gaze and the youths brought before our juvenile courts have been shielded from publicity. This insistence on confidentiality is born of a tender concern for the welfare of the child, to hide his youthful errors and "`bury them in the graveyard of forgotten past.'" . .. Publication of the names of juvenile offenders may seriously impair the rehabilitative goals of the juvenile justice system and handicap the youths' prospects for adjustment in society.
Id. at 107, 99 S.Ct. at 2673 (Rehnquist, J., concurring) (citations omitted). Justice Rehnquist's concurring opinion also noted that public exposure might cause undue embarrassment to the juvenile's family and cause the juvenile to lose employment opportunities. In addition, publicity would nullify the intent of expungement laws by allowing access to the juvenile's record through reference to an old newspaper. Publicity may therefore defeat the beneficent and rehabilitative purposes of the juvenile court system. Id. at 108, 99 S.Ct. at 2673. Therefore, even though the Court has not squarely addressed the issue of public access to juvenile court proceedings, it has evinced an appreciation for the purposes served by closure.
Several jurisdictions have addressed the constitutionality of state statutes establishing a presumption of closure in juvenile court proceedings and have concluded that the statutes are permissible under the first amendment.[2]Florida Publishing Co. v. Morgan, 253 Ga. 467, 322 S.E.2d 233 (1984); Edward A. Sherman Publishing Co. v. Goldberg, 443 A.2d 1252 (R.I. 1982); In re J.S., 140 Vt. 458, 438 A.2d 1125 (1981). In Florida Publishing, the court held that, consistent with the United States Constitution, the state may create a rule that juvenile proceedings are presumed closed to the *849 public unless the public or press shows that the state's or the juvenile's interest in a closed proceeding is not overriding or compelling. Florida Publishing, 322 S.E.2d at 238. The court stated that, unlike criminal trials, juvenile proceedings have been closed to the public, therefore, no historically based constitutional presumption of openness applies to juvenile proceedings. Id. at 237-38.
In Edward A. Sherman, the court concluded that the principle of an open trial serves to protect an adult defendant against prosecutorial or judicial abuse, whereas the juvenile's interests are best served by anonymity and confidentiality. Edward A. Sherman, 443 A.2d at 1258. Thus, the court concluded, the Rhode Island shield law, excluding all from juvenile proceedings except those with a direct interest, is constitutionally permissible. Id. Finally, in In re J.S., the court held that a Vermont statute, which permits the attendance of the parties, their counsel and witnesses, and other persons as the court finds to have a proper interest in the case only, does not violate the United States Constitution. In re J.S., 438 A.2d at 1129. The court found that the compelling interest served by the confidentiality shield statute overrides the public right of access to juvenile proceedings. Id.
Utah's statute is similar to the statutes examined in Florida Publishing, Edward A. Sherman and In re J.S. Under Utah Code Ann. § 78-3a-33 (1987), the general public is excluded from juvenile court hearings, "provided, however, that whenever the hearing is had on a written petition charging what would be a felony if committed by an adult, persons having a legitimate interest in the proceeding, including responsible representatives of public information media, may be admitted by the judge." The statute, therefore, absolutely excludes the press from most proceedings, but gives the juvenile court judge considerable discretion in determining whether the media may attend hearings involving acts which would constitute felonies in the adult system.[3]
We agree with Florida Publishing that the presumption of openness applied in criminal trials under the first amendment does not extend to juvenile proceedings. The rationale for the right of access in criminal trials is not coextensive in the juvenile court setting. Unlike criminal trials, juvenile proceedings have not been historically open. Daily Mail, 443 U.S. at 107, 99 S.Ct. at 2673. Further, public access does not play as significant a role in the proper functioning of the juvenile justice system as it does in the adult system. In contrast to adult criminal procedures, juvenile court proceedings do not involve criminal convictions, but are regarded as civil proceedings. Utah Code Ann. § 78-3a-44 (1987). Because juvenile proceedings are not intended to punish, public access would not serve as a check against unjust conviction and the undeserved taint of criminality. Indeed, confidentiality of juvenile proceedings is designed to avoid such taint. We do acknowledge, however, the potential public good which would result from public awareness and understanding of the juvenile court system. As with the adult system, such publicity would promote public involvement in the governmental processes and might deter inappropriate actions on the part of some participants. However, that potential benefit must be weighed against the asserted state interest in preserving confidentiality of juvenile court proceedings. Confidentiality furthers society's interest in rehabilitation of youthful offenders and their integration as law-abiding adults. Public access to juvenile proceedings would detrimentally affect those purposes of the juvenile justice system. We find that the state has a compelling interest in maintaining the confidentiality of juvenile court proceedings which outweighs the media's right of access. Therefore, we hold that a presumption of openness in juvenile proceedings is not required under the first amendment of the United States Constitution.

*850 III. UTAH CONSTITUTION
We next consider Kearns-Tribune's contention that juvenile court proceedings must be presumptively open under article I, section 15 of the Utah Constitution, which provides, "[n]o law shall be passed to abridge or restrain the freedom of speech or of the press." In KUTV, Inc. v. Conder, 668 P.2d 513, 521 (Utah 1983), Justice Oaks examined the case law of states with similar constitutional provisions and concluded that while there was "no support for the argument that [section 15 was] intended to create an absolute right that would exalt the freedom of the press over every other freedom and interest protected in the Constitution," Utah's constitutional free press provision is at least as protective as the first amendment of the United States Constitution. As a result, the Utah Supreme Court has found that the Utah Constitution implicitly provides a public right of access to criminal trials. State v. Crowley, 766 P.2d 1069, 1070 (Utah 1988); Kearns-Tribune Corp. v. Lewis, 685 P.2d 515, 521 (Utah 1984). In the context of criminal proceedings, the court has "upheld an expansive view of the right to a public trial." Crowley, 766 P.2d at 1070.
In Crowley, the court reversed a defendant's forcible rape conviction because of the trial court's closure of the court during the testimony of a fifteen-year-old complainant. The court found that the closure order violated defendant's right to a public trial under article I, section 12 of the Utah Constitution in that it was not supported by any evidence or findings concerning its necessity. Crowley, 766 P.2d at 1071. The court focused on the importance of public trials in the criminal justice system to safeguard the accused against a miscarriage of justice, keep the prosecution and the judge within their proper bounds, and allow an accused to have family and friends present when the accused is facing serious criminal charges. Id. at 1070.
In further interpreting the freedom of the press provision in connection with criminal proceedings, the Utah Supreme Court has extended the right of access to preliminary hearings, Lewis, 685 P.2d at 521, and to competency hearings for criminal defendants. Society of Professional Journalists v. Bullock, 743 P.2d 1166, 1178 (Utah 1987). In Lewis, three defendants were charged with aggravated kidnapping, aggravated sexual assault and aggravated exploitation of prostitution. The defense and the prosecution joined in a motion to close the preliminary hearing to the public. The trial court ordered the hearing closed, stating that the nature of the offense and the balancing of the interests of the victim required the hearing to be closed. In reversing the trial court's closure order, the Utah Supreme Court examined both the purpose of the applicable state constitutional provisions and the purpose of preliminary hearings. Id. at 520-21. The court emphasized that "[t]he freedoms of speech and press are fundamental to the effective exercise of the ultimate political power of the people." Id. at 521. If people are to be informatively involved in the operations of the judicial branch, as part of their ultimate sovereign power, they must have access to government operations. Id. Further, the court reviewed the purposes of preliminary hearings under Utah procedure and found that in Utah, unlike other jurisdictions, preliminary hearings do not include motions to suppress evidence and, consequently, "the added risks of prejudice through pretrial disclosure of evidence targeted in a motion to suppress are not present in Utah's preliminary hearing." Id. The court held that because a defendant's right to a fair trial prevails over the public's right of access, preliminary hearings in criminal cases may be closed when access would pose a realistic likelihood of prejudice to the accused's right to a fair trial. Id. at 523-24.
In determining whether a proceeding should be presumptively open to the public, Justice Zimmerman, in Bullock, stated that existence of the right of access would depend upon "the nature and purpose of the proceeding in issue." Bullock, 743 P.2d at 1177. Accordingly, the court described the nature of the competency hearings at issue, and found no compelling reason for presumptively closing them. Id. at 1178-79. In both Lewis and Bullock, the court noted *851 that the proceedings at issue were closely related to anticipated criminal trials, presumed to be open to the public, and the same arguments for openness applied.
The Utah Supreme Court has not addressed the interplay of the juvenile justice system and the freedom of the press provision. In fact, all cases dealing with article I, section 15 have involved the adult criminal system in some manner. In order to determine whether article I, section 15 requires to presumptively open juvenile court proceedings, we will examine the nature and purpose of those proceedings. In contrast to criminal proceedings, Utah's juvenile court proceedings are civil in nature and are not intended to punish. Utah Code Ann. § 78-3a-44 (1987); State v. Stewart, 544 P.2d 477 (Utah 1975). The juvenile courts exist to aid the physical, mental and moral welfare of delinquent children and also to protect society against mischievous and destructive acts of delinquent children. Donald R. v. Whitmer, 30 Utah 2d 206, 515 P.2d 617, 619 (1973). Further, the stated purposes of Utah's juvenile court act are to secure for each child the care, guidance and control that will serve his welfare and the best interests of the state, to preserve and strengthen family ties, to improve the conditions and home environment responsible for his delinquency and, at the same time, to protect the community and its citizens against juvenile violence and juvenile lawbreaking. Utah Code Ann. § 78-3a-1 (1987).[4] The juvenile courts have jurisdiction in a wide variety of types of proceedings, including, among others, violations of the law by juveniles, neglected or dependent children, habitual truancy, child custody or guardian matters, termination of parental rights, and ungovernable, runaway children. Utah Code Ann. §§ 78-3a-16 and 16.5 (1987).
Unlike the criminal system, public proceedings have not been traditionally used in the juvenile justice system to safeguard the rights of the juvenile. Moreover, public access to juvenile court proceedings could severely undermine the purposes of the juvenile justice system. Presumptively open juvenile courtrooms would allow anyone walking by the courtroom to enter and learn intimate details about highly sensitive juvenile proceedings. Publicity of juvenile proceedings could embarrass family members, weaken family relationships and hamper efforts to rehabilitate the juvenile. In re J.S., 438 A.2d at 1129. In addition, publicity could adversely affect the juvenile's chances for adjusting to society, including his acceptance by the public and his opportunities for employment. Id.
Although public access is important to foster informed public involvement in government and to enhance public confidence in the judicial branch, we find that, in light of the purposes of the juvenile justice system and the probability that public access would severely undermine that system, a presumptively open proceeding is not mandated by the Utah Constitution. Therefore, we hold that under article I, section 15 of the Utah Constitution, the people do not have a constitutional right of public access to juvenile court proceedings in Utah.[5]

*852 IV. JUVENILE COURT'S FINDINGS & ORDER
We next consider whether the trial court properly refused to open N.H.B.'s recall hearing to the media. Although we have held that a presumption of closure in juvenile court proceedings is constitutionally permissible, the presumption is not irrebutable, because of the constitutional considerations previously discussed. In instances where an open juvenile proceeding is sought, an expeditious hearing should be held. "The public and/or press must be given an opportunity to show that the state's or juveniles' interest in a closed hearing is not `overriding' or `compelling.'" Florida Publishing Co., 322 S.E.2d at 238. Following the hearing, the court should issue an order with written findings, sufficient to support the order and provide meaningful appellate review. Id.
In the present case, all interested parties received notice of the hearing on the motion to open the proceedings and the hearing occurred shortly thereafter. None of the parties presented evidence at the hearing, but offered oral argument and memoranda on the issues involved.
The court denied the motion to open the hearing based on the following findings: 1) section 78-3a-33 requires closure of juvenile court hearings, unless the judge determines otherwise, and there was no compelling reason in this case to give the juvenile a lesser right of privacy; 2) in recall hearings a juvenile is presumed to have committed the offenses, thus abundant testimony regarding the alleged offenses would be presented which could result in bias or prejudice if reported prior to a subsequent trial; 3) the very issue before the court was whether the juvenile should receive the protections of the juvenile court system; and 4) the juvenile and his family were entitled to a closed proceeding due to the sensitive psychological information that would be revealed at the hearing.
The applicable standard of review is that "the findings of the juvenile court are entitled to a presumption of correctness. If ... there is evidence to support the trial court's action that satisfies the applicable standard of proof, we will not substitute our judgment for that of the trier of fact." In re R.W., 717 P.2d 258, 259 (Utah 1986) (citations omitted). Kearns-Tribune asserts error in the juvenile court's failure to consider evidence in making its decision to close the hearing. However, as the proponent of the motion to open the proceeding, Kearns-Tribune bore the burden of proof and cannot now complain because it failed to offer evidence sufficient to persuade the court. It is clear from the record, moreover, that the trial court fully considered all relevant factors in arriving at its decision to deny the motion. First, the juvenile court thoroughly considered the nature of the recall hearing in making its determination. In deciding whether the juvenile court should request a return of jurisdiction, the judge must consider the juvenile's age, legal record and the seriousness of the charge. Utah Code Ann. § 78-3a-25(9) (1987). As in certification hearings, the purpose of the recall hearing is not to ascertain whether or not the child committed the offense but to determine if the best interest of the child or of the public would be served by returning jurisdiction to the juvenile court. In re Schreuder, 649 P.2d 19, 25 (1982). The judge must anticipate the possibility of an ultimate adjudication of guilt and review the merits of having the proceeding in the adult or juvenile systems in that light. Id. at 24. Thus, as the court found, the recall hearing may involve revealing highly sensitive information about the child's psychological condition and the comparative impact upon him of the rehabilitative system of the juvenile justice system as opposed to the adult criminal justice system.
Second, the court factored in the possibility that N.H.B. might be tried in the adult criminal justice system and therefore information exposed at the motion to recall hearing could later infringe upon his right to a fair trial. In addition, the court appropriately considered that the precise issue before the court was whether the child *853 should be afforded the protections of the juvenile court system. The court's findings amply support the order that the proceedings be closed to the media.
AFFIRMED.
GARFF and DAVIDSON, JJ., concur.
NOTES
[1] In Richmond, the Court observed that while the issue of access to civil cases is not before the Court, civil trials have historically been open to the public. Richmond, 448 U.S. at 581 n. 17, 100 S.Ct. at 2829 n. 17. On the other hand, in Justice O'Connor's concurring opinion in Globe, she states that she interprets "neither Richmond Newspapers nor the Court's decision today to carry any implications outside the context of criminal trials." Globe, 457 U.S. at 611, 102 S.Ct. at 2622.
[2] Two jurisdictions have examined statutes which, unlike the Utah statute, presume juvenile court proceedings open unless closure is requested. In Associated Press v. Bradshaw, 410 N.W.2d 577 (S.D. 1987), the court interpreted its state statute to allow judges discretion to admit certain enumerated parties to the juvenile proceeding. Id. at 579. The court declined to interpret the statute to mean that the judge must allow all enumerated persons access to the hearing and stated that once closure is requested, the court must hold a hearing and take evidence on the need for closure. Id. The court stated that the juvenile court must balance the competing interest in the confidentiality and anonymity of a juvenile court proceeding against the media's rights under the first amendment. Id. at 578. In addition, the court must consider the juvenile's right to a fair trial under the sixth amendment. Id. The court concluded that closure should not occur unless the court makes specific supported findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The court then reversed the trial court's closure order due to unsupported factual findings. Id. at 580-81.

In Taylor v. State, 438 N.E.2d 275 (Ind. 1982) cert. denied 459 U.S. 1149, 103 S.Ct. 793, 74 L.Ed.2d 998 the court affirmed the juvenile court's order permitting the media to attend a hearing involving a juvenile charged with committing robbery resulting in bodily injury. The Indiana statute permitted the juvenile court to determine whether the public should be excluded from the proceedings and stated that the court shall consider that the best interests of the community are generally served by the public's ability to obtain information about charges that would be a felony if committed by an adult. The court concluded that under the express language of the statute, the charged crime fell within the class of cases for which access and disclosure are deemed generally to serve the best interest of the public. Taylor, 438 N.E.2d at 280-81.
[3] Kearns-Tribune has not differentiated the two types of proceedings in its arguments, and, therefore, contends that all types of juvenile court proceedings should be presumptively open to the public.
[4] Section 78-3a-1 was amended in 1988, but because the section is substantive rather than procedural, we apply the version of the statute in effect at the time the cause of action arose. Carlucci v. Utah State Indus. Comm'n, 725 P.2d 1335, 1336 (Utah 1986)). Also, the changes made in the statute do not affect our analysis.
[5] Kearns-Tribune also asserts that article I, section 11 of the Utah Constitution, which states "[a]ll courts shall be open," provides further support for its position that juvenile court proceedings should be presumptively open. Article I, section 11 provides, "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, which shall be administered without denial or unnecessary delay; and no person shall be barred from prosecuting or defending before any tribunal in this State ... any civil cause to which he is a party." The Utah Supreme Court has stated that section 11 "guarantees access to the courts and a judicial procedure that is based on fairness and equality." Berry v. Beech Aircraft Corp., 717 P.2d 670, 675 (Utah 1985). In addition, the constitutional guarantee of access to the courthouse was intended to confer a remedy by due course of law for injuries to person, property or reputation. Id. We reject Kearns-Tribune's suggestion that section 11 mandates that all courts should be physically open. In addition, Kearns-Tribune has not asserted how the guarantee of access to the courthouse for a remedy to injury is relevant to arguments relating to freedom of the press.