In the Matter of HUGHES COUNTY ACTION NO. JUV 90–3.

In the Matter of HUGHES COUNTY ACTION NO. JUV 89–35.

In the Matter of HUGHES COUNTY ACTION NO. JUV 90–4.

No. 16997.

Supreme Court of South Dakota.

Argued Feb. 15, 1990.

Decided Feb. 28, 1990.

Jon E. Arneson, Sioux Falls, for appellants, Argus Leader, Associated Press and KSFY–TV.

Craig A. Kennedy, Yankton, for State of S.D.

Brent A. Wilbur, Pierre, James C. Robbennolt, Pierre, and Al Arendt, Pierre, for appellees.

Rick Johnson, Gregory, amicus curiae.

WUEST, Chief Justice.

The Argus Leader, Associated Press and KSFY–TV (media) appeal from a circuit court's order of closure in a juvenile proceeding. We affirm.

Only a brief recital of the facts is necessary to enable this court to resolve the legal issues raised on appeal. On November 28, 1989, there was an alleged incident at the Governor's residence in Pierre, South Dakota. Two days later the incident was reported to the Pierre police as a rape. As a result of this reported incident, petitions alleging juvenile delinquency were filed against three juvenile high school students in Pierre, South Dakota. A fourth person, an eighteen-year-old high school student, was charged as an adult and pled guilty to a misdemeanor on January 16, 1990.

Shortly after the alleged crime was reported, the media began to publish information it had obtained about this incident and the proceedings which followed. As a result of this media attention, the three juveniles moved for a closure of proceedings

pursuant to SDCL 26–8–32.[1] At the closure hearing on January 22, 1990, the three juveniles presented evidence regarding the nature and extent of the media's coverage of the proceedings. The media presented no evidence.

After hearing arguments from each party, the trial court asked whether any compromise could be reached to sufficiently satisfy the interests of each party. When the trial court received no response to this inquiry, it offered to allow the media access to the juvenile proceedings if the media would not publish the names, pictures, place of residence or identity of any parties involved.[2] The media refused to accept this offer.

Based upon the discussions, arguments, and the media's refusal to compromise, the trial court determined that, in the interest of the three juveniles, it had no other alternative but to close the adjudicatory portion of the juvenile proceedings. An order, supported by findings of fact and conclusions of law, was subsequently entered to that effect. The media appealed from the trial court's order of closure and, pursuant to motions, we stayed the juvenile proceedings and granted an expedited briefing schedule and oral argument.

On appeal, the media presents three arguments. The media first contends that it has an absolute right of access to juvenile proceedings under SDCL 26–8–32. Second, the media argues that the trial court's findings of fact are clearly erroneous and do not support its order of closure. Third, the media contends that the trial court's offer to allow media access to the juvenile proceedings upon the condition that the media not reveal any information concerning the identity of any individuals involved in the action, constitutes an unconstitutional prior restraint and an unconstitutional sanction on publication of lawfully obtained information.

■ We first address the media's argument that SDCL 26–8–32 provides it with an absolute right of access to juvenile proceedings. This issue is not new to this court. In *Associated Press v. Bradshaw*, 410 N.W.2d 577 (S.D.1987) we rejected this precise argument. We believe that our reasoning in *Bradshaw* is sound and we again refuse to accept the argument that the media has an absolute statutory right of access to juvenile proceedings under SDCL 26–8–32.

As we pointed out in *Bradshaw*, the media's right of access to juvenile proceedings stems from SDCL 26–8–32 which our legislature adopted in 1968. This statute provides:

Upon the trial or hearing of cases arising under this chapter, the court shall admit the general public to the hearing room, except when the child, his parents or their attorney request that the hearing be private, and *in that event the court may admit only such persons as may have a direct interest in the case, witnesses, officers of the court and news media representatives.* Summons may be issued requiring the appearance of any other person whose presence the court deems necessary. (Emphasis added).

■ In rejecting the media's argument in *Bradshaw* that this statute provides the media with an absolute right of access to juvenile proceedings, we first noted that

---

1. SDCL 26–8–32 provides:

    Upon the trial or hearing of cases arising under this chapter, the court shall admit the general public to the hearing room, except when the child, his parents or their attorney request that the hearing be private, and in that event the court may admit only such persons as may have a direct interest in the case, witnesses, officers of the court and news media representatives. Summons may be issued requiring the appearance of any other person whose presence the court deems necessary.

2. Essentially, the trial court stated that it would allow media access to the juvenile proceedings so long as the media complied with SDCL 26–8–34. SDCL 26–8–34 provides:

    The name, picture, place of residence, or identity of any child, parent, guardian, other custodian, or any person appearing as a witness in proceedings under this chapter shall not be published or broadcast in any news media, nor given any other publicity, unless for good cause it is specifically permitted by order of the court.

the media's rights of access to judicial proceedings are no greater than those possessed by the public. *Bradshaw, supra,* at 579, *citing, Pell v. Procunier,* 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974); *Saxbe v. Washington Post Co.,* 417 U.S. 843, 94 S.Ct. 2811, 41 L.Ed.2d 514 (1974). Given this principle, we then stated:

> SDCL 26–8–32 reads that "the court *may* admit" certain categories of persons. By the language used (i.e., may) our legislature gave judges the discretion to admit one, all, or a combination of the enumerated parties to a juvenile court hearing. *To hold otherwise would give the press greater rights than that of the general public.* (Emphasis added).

*Bradshaw, supra,* at 579. We believe that this reasoning is sound. Hence, we are unable to conclude that our interpretation of SDCL 26–8–32 was erroneous and we therefore decline the media's invitation to reverse our decision in *Bradshaw.*

■ We next address the media's contention that the trial court's findings of fact are clearly erroneous and hence do not support the order of closure. In determining whether a juvenile proceeding should be closed, a trial court must balance the First Amendment rights of the public and the press against the State's interests in preserving the juvenile offender's anonymity and general protection over juveniles. *Bradshaw, supra* at 579. This balancing of rights and interests, of course, requires the exercise of discretion on the part of the trial court. *Id.* After the trial court has balanced these rights and interests, it determines whether closure is warranted and enters findings of fact and conclusions of law supporting its decision. *Bradshaw,* supra at 580, *citing Press–Enterprise Co. v. Superior Court,* 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986). On appeal, our task is to determine whether the findings of fact set forth in support of the closure order are clearly erroneous,[3] and whether the trial court abused its discretion in closing the juvenile proceedings to the media.

■ In *Bradshaw,* this court set forth a number of factors that a trial court should consider in determining whether a juvenile proceeding should be closed. These factors, which are not intended to be exclusive, include: (1) the nature and extent of press coverage, including the circulation and geographical distribution; (2) whether the coverage prior to the closure hearing has been excessive or sensational; (3) whether the minor's name has been released to the public; (4) whether there are alternative measures to closure; and, (5) whether the proceedings closed to the public and press will be temporary. *Bradshaw, supra.* In the present case, the trial court entered findings of fact concerning each of these factors and concluded that the adjudicatory portion of the juvenile proceedings was to be closed to the media. Our review of the record indicates that the trial court's findings were not clearly erroneous and support the order of closure.

The trial court found that newspaper and electronic media coverage of this matter in South Dakota was widespread and pervasive. The trial court further found that this coverage had become nationwide. We do not believe that these findings can be disputed. The record reflects that this matter has been reported on by the Washington, D.C. *Times,* the Orlando, Florida, *Sentinel, Newsweek* magazine and the nationally distributed newspaper *U.S.A. Today.* This matter was also reported on in a nationally televised program, "A Current Affair." Additionally, over eighty articles regarding this matter have been published in South Dakota newspapers as of January 16, 1990. Considering these facts, it is clear the trial court did not err in finding that the media's coverage of this matter has been widespread and extensive. This fact weighs heavily in favor of trial court's order of closure. It is clear that the State has a strong interest in preserving the confidentiality of juvenile proceedings.[4] If the

---

3. *Wiggins v. Shewmake,* 374 N.W.2d 111 (S.D. 1985); *McFarland v. Northwest Realty Co.,* 362 N.W.2d 98 (S.D.1985); *Dougherty v. Beckman,* 347 N.W.2d 587 (S.D.1984).

4. For an excellent discussion of the State's interest in preserving the confidentiality of juvenile proceedings *see,* Jonas, S., *Press Access to the Juvenile Courtroom: Juvenile Anonymity and*

media coverage of this matter was not extensive and widespread then the risk of failing to preserve the State's interest in confidential juvenile proceedings would not be as great. When the media's coverage of an incident is extensive and widespread, however, there is a greater risk that the State's interest in preserving the confidentiality of such proceedings may be forsaken. The trial court's finding with respect to this issue supports its order of closure.

The trial court also found that the media's coverage of this event was excessive and sensational. We do not believe that this finding is clearly erroneous. As noted previously, over eighty articles regarding this matter have been published in newspapers throughout the state. Much of the information printed in these articles is not new information, but rather a restatement of facts previously set forth in other articles. This indicates that the coverage of this incident has been excessive. Furthermore, the nationally televised program "A Current Affair," suggested that a crime had been committed at the Governor's residence and that officials of the state of South Dakota are trying to cover up this alleged fact. Such a suggestion or innuendo clearly indicates that this matter has been treated in a sensational fashion by this member of the media. The sensationalistic treatment of this matter on national television and the numerous state newspaper articles relating to this matter clearly support the trial court's order of closure.

■ The trial court's next finding concerns the factor of whether the names of the minors have been released to the public. The trial court found that the name of one of the juveniles involved in this action was released to the public by the media. The trial court further found that the names of the other two juveniles have not been published by the media. Since the name of one of the juveniles has already been published, the media contends that it

should be allowed to have access to the juvenile proceedings. We disagree.

In addressing this issue, it is significant to note that the media did not obtain the name of the juvenile alleged to have been involved in this incident through any actions of the trial court. Therefore, the media cannot argue that the trial court has indicated that this. is a matter of public interest. *See, Oklahoma Publishing Co. v. District Court,* 430 U.S. 308, 97 S.Ct. 1045, 51 L.Ed.2d 355 (1977). Furthermore, we do not believe the mere publishing of the name of one of the minors allegedly involved in this incident dictates that the juvenile proceedings should be open to the media. This issue was recently presented to the Supreme Court of Vermont in *In re J.S.,* 140 Vt. 458, 438 A.2d 1125 (1981). The court rejected the argument that the juvenile proceedings of a particular action should be opened to the media since the media was already aware of the juvenile's identity and in fact had previously published the juvenile's name. The court reasoned:

> The fact that J.S.'s name is already a household word in Essex Junction, and that the nature of the offense and his alleged participation with a named adult defendant in certain crimes will be disclosed in a trial of the adult, is no reason to dismantle our juvenile court system. Confidential proceedings continue to serve overriding interests.

*In re J.S., supra,* 438 A.2d at 1131.

Our State has a strong interest in preserving the confidentiality of juvenile proceedings. There is no reason to abandon this interest merely because one of the names of the juveniles involved in this action has been released to the public. This is particularly true when considering the interests of the two other juveniles whose identities have not been released to the public.[5] The State's interest in preserving the confidentiality of these juvenile proceedings may still be substantially served under these circumstances.

the First Amendment, 17 Columbia Journal of Law and Social Problems 287 (1982).

5. The identity of the alleged victim who is also a minor has not been disclosed to the public. Her interests, as well, must be considered in determining whether closure was necessary.

We next turn our attention to the trial court's finding that there were no alternative measures to closure. We are convinced that the trial court had no other alternative than to close the judicial proceedings to the media. It is clear that the trial court made sufficient efforts to provide an alternative to closure which would sufficiently satisfy the interests of all parties.[6] These attempts, however, were stifled because the media would not agree to refrain from publishing confidential information obtained at the juvenile proceedings if they were allowed to have access to such proceedings. If the trial court chose to succumb to the demands of the media, the interests of the State in keeping juvenile proceedings confidential would be forsaken. As a result of the media's refusal to enter into any sort of compromise to protect the interests of all parties, the trial court was left with no other alternative but to close the adjudicatory portion of the juvenile proceedings to the media.

Another factor considered in determining whether a closure of juvenile proceedings is necessary is whether the closure will be temporary. In this regard, the trial court specifically found that the closure order would only apply to the adjudicatory hearing. The trial court did not hold that the dispositional phase of this proceeding would be closed to the media. Therefore, it is apparent that the order of closure is temporary, not permanent. This fact clearly supports the validity of the trial court's order of closure.

We have reviewed the list of factors the trial court should consider in determining whether juvenile proceedings should be closed. *Bradshaw, supra.* We believe, however, that another factor should be considered. In the present case, the alleged victim is also a minor. Her interests must be considered as well in determining whether closure is warranted in this case. In *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982), the United States Supreme Court recognized that the State has a compelling interest in protecting minor victims of sex crimes from further trauma and embarrassment. Recognizing this interest, the United States Supreme Court declared that under certain circumstances closure may be necessary to protect the welfare of the minor victim. The Court stated that "among the factors to be weighed [in determining whether closure is necessary to protect the welfare of a minor victim] are the minor victim's age, psychological maturity and understanding, the nature of the crime, the desires of the victim and the interests of the parents and relatives." *Globe Newspaper, supra,* at 457 U.S. 608, 102 S.Ct. 2620, 73 L.Ed.2d 258. The alleged victim in the present action is 16 years old. Her desire to have the juvenile proceedings closed to the media has been made known to this court.[7] The trial court recognized the alleged victim's interest when it noted that her name had not been released to the public. These facts weigh heavily in favor of the trial court's order of closure since this closure fulfills the compelling interest of the state in protecting the minor alleged victim.

We have reviewed the trial court's findings of fact and are unable to conclude that they are clearly erroneous. Furthermore, we are satisfied that these findings support the order of closure and that the trial court did not abuse its discretion in entering this order. An abuse of discretion "refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence." *People in the Interest of D.H.,* 408 N.W.2d 743, 745 (S.D.1987); *State v. Bartlett,* 411 N.W.2d 411, 413 (S.D.1987). The trial court's decision to close the adjudicatory portion of this juvenile proceeding is not clearly against rea-

---

6. The importance of attempting to provide an alternative to closure has been emphasized repeatedly by the United States Supreme Court. *See e.g., Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980); *Press Enterprise Co. v. Superior Court,* 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986).

7. The alleged victim filed an Amicus Curiae brief expressing her desire to have the juvenile proceedings closed to the media. Additionally, we note that her attorney, Rick Johnson, was present during the oral arguments presented in this court regarding this matter.

son and evidence. Therefore, we hold that the trial court did not err in entering this order of closure.

■ Finally, we address the issue of whether the trial court's conditioning access to the juvenile proceedings on the media's compliance with SDCL 26-8-34 constitutes an unconstitutional prior restraint and an unconstitutional sanction on publication of lawfully obtained information. After reviewing the facts of this case, we are unable to conclude that the trial court's actions constituted an unconstitutional prior restraint. By conditioning the media's access to the juvenile proceedings on its compliance with SDCL 26-8-34, the trial court in no way prohibited or restrained the media from publishing any information with respect to this matter. Since there is no action against the media for violating this statute, nor an order directing the media to comply with this statute, we refrain from determining any questions regarding the constitutionality of SDCL 26-8-34. Since 1892 to the present this court has refrained from determining the constitutionality of a statute until a necessity for a decision arises. *See, State v. Becker,* 3 S.D. 51, 51 N.W. 1018 (1892); *See also, In re Snyder's Estate v. Snyder,* 74 S.D. 14, 48 N.W.2d 238 (1951); *State v. Big Head,* 363 N.W.2d 556 (S.D.1985). We make no exception to this long-standing rule in the present case.

Additionally, we reject the media's contention that the conditioning of access on the media's compliance with SDCL 26-8-34 constituted an unconstitutional sanction on publication of lawfully obtained information. The trial court did not close the adjudicatory portion of the juvenile proceedings to the media as a means of punishing the media for publishing lawfully obtained information. Rather, such conditional access was offered merely as an alternative to a totally closed adjudicatory hearing. This alternative was designed to satisfy the interests of all parties. We will not condemn the trial court merely for attempting to provide an alternative to a totally closed hearing.

As a final matter, we are not unmindful of the media's First Amendment rights. The freedoms granted in the First Amendment, however, are not absolute and can be limited in certain situations. The present case represents one of those situations. Our State has a strong interest in preserving the confidentiality of juvenile proceedings. *Bradshaw, supra.* In *Smith v. Daily Mail Publishing Co.,* 443 U.S. 97, 107, 99 S.Ct. 2667, 2673, 61 L.Ed.2d 399, 407-408 (1979), the state's interest in preserving the confidentiality of juvenile proceedings was recognized by Justice Rehnquist, now Chief Justice Rehnquist, in his concurring opinion. Justice Rehnquist stated:

It is a hallmark of our juvenile justice system in the United States that virtually from its inception at the end of the last century its proceedings have been conducted outside of the public's full gaze and the youths brought before our juvenile courts have been shielded from publicity ... The prohibition of publication of a juvenile's name is designed to protect the young person from the stigma of his misconduct and is rooted in the principle that a court concerned with juvenile affairs serves as a rehabilitative and protective agency of the State.

In the present case, the trial court recognized both the State's interest in preserving the confidentiality of juvenile proceedings and also the First Amendment rights of the media. The trial court, having sought a solution which would sufficiently satisfy the interest of each party, determined that closure of the adjudicatory portion of this proceeding was necessary to fulfill the State's strong interest in preserving the confidentiality of juvenile proceedings. This determination was made primarily because the media indicated that it would not preserve confidential information obtained at the juvenile proceedings if it were allowed to have access to such proceedings. In light of this fact, as well as all of the other facts previously mentioned, we must conclude that the trial court did not err in rendering the order of closure.

Order of closure is affirmed.

MORGAN and HENDERSON, JJ., and HERTZ and GILBERTSON, Circuit Judges, concur.

HERTZ, Circuit Judge, sitting for SABERS, J., disqualified.

GILBERTSON, Circuit Judge, sitting for MILLER, J., disqualified.