**AUSTIN DAILY HERALD and Post–Bulletin Co., Petitioners,**

v.

**Honorable James L. MORK, Judge of District Court, Respondent.**

No. C4–93–2186.

Court of Appeals of Minnesota.

Nov. 5, 1993.

Review Denied Dec. 14, 1993.

Mark Anfinson, Minneapolis, for petitioners.

Paul G. Morreim, Freeborn County Atty., Laura Auron, Asst. Freeborn County Atty., Albert Lea, for State of MN in underlying action.

Scott M. Leighton, Austin, for defendant Harris in underlying action.

Considered at Special Term and decided by ANDERSON, C.J., and CRIPPEN and SHORT, JJ.

## SPECIAL TERM OPINION

ANDERSON, Chief Judge.

### FACTS

Media representatives seek a writ of prohibition, challenging orders restricting access during parts of a criminal trial.

Before trial began on charges of criminal sexual conduct, the trial court ruled defense counsel would be allowed to cross-examine juvenile victims regarding their prior juvenile records. The court ordered the public excluded from the criminal trial during the testimony of juvenile victims and scheduled a hearing on media objections to the restricted access. *See* Minn.R.Crim.P. 25.03 (procedures for issuing a restrictive order).

At that hearing, the media representatives suggested alternatives to permit media coverage of the trial, while protecting juvenile witnesses and the confidentiality of juvenile records. Media representatives initially were willing to forego publication of the names of the juveniles, but they were unwilling to preserve the confidentiality of any juvenile records revealed during cross-examination. In the absence of an agreement, the trial court modified its restrictive order to permit media representatives to attend, on condition they not reveal the names or information about juvenile records of the underage victims and witnesses. The order still excludes the general public from the courtroom during the testimony of juvenile victims and witnesses.

### DECISION

■ Prohibition is the proper remedy to challenge an order restricting media access to criminal proceedings. *See* Minn.R.Crim.P. 25.03, subd. 5 (anyone aggrieved by restrictive order in criminal case may petition this court for review); *Minneapolis Star & Tribune Co. v. Schumacher,* 392 N.W.2d 197, 208 (Minn.1986) ("normal appellate procedure is inadequate" in cases where media access is sought and prohibition is proper remedy).

The media representatives argue the trial court has imposed an impermissible prior restraint on the publication of information. We disagree. After careful review of the order, we conclude the trial court properly limited access to parts of a criminal trial, while imposing valid restrictions on media representatives who choose to attend.

■ A "prior restraint" limits publication of information in the possession of the media. *Northwest Publications, Inc. v. Anderson,* 259 N.W.2d 254, 257 (Minn.1977). There is a heavy presumption against the constitutional validity of restrictions on the publication of information obtained lawfully by the media. *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963). By contrast, an order limiting media access to information does not constitute a prior restraint. *Pell v. Procunier,* 417 U.S. 817, 829–30, 94 S.Ct. 2800, 2807–08, 41 L.Ed.2d 495 (1974) (limitations on media access do not constitute limitations on freedom to report).

■ There is a constitutional presumption of access to criminal trials. *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). But access to criminal trials is not an absolute right. *Globe Newspaper Co. v. Superior Court of Norfolk,* 457 U.S. 596, 606, 102 S.Ct. 2613, 2620, 73 L.Ed.2d 248 (1982); *see also Gannett Co. v. DePasquale,* 443 U.S. 368, 378–79, 99 S.Ct. 2898, 2905, 61 L.Ed.2d 608 (1979) (constitutional right of access does not extend to pretrial proceedings in criminal case). Access to a criminal trial may be limited "to inhibit the disclosure of sensitive information," but only if the limitation is necessary to serve "a compelling governmental interest, and is narrowly tailored to serve that interest." *Globe,* 457 U.S. at 606–07, 102 S.Ct. at 2620.

■ In this case, the trial court has excluded the public from parts of the trial and allowed media representatives to attend, on condition that they forego publication of the names of the juveniles and information from confidential juvenile records. The trial court has not restrained the media representatives from publishing information already in their possession about the juveniles or their prior involvement with the juvenile court system, or information the media might later obtain from other sources. *Compare Minneapolis*

*Star & Tribune Co. v. Schmidt,* 360 N.W.2d 433 (Minn.App.1985) (order forbidding publication of information about pending juvenile court proceeding is unconstitutional, where information was obtained legally from public records and independent sources).

Although the issue before us is the propriety of the conditions placed on media access, we are nonetheless troubled by the compromise reached by the trial court because it permits selective access. By permitting some reporting while prohibiting other reporting, the trial court in effect parcels out news to the press and the public. Permitting the media to report only half the news risks distorting the truth and ruining the public's ability to understand the case or the work of the courts in administering justice. In addition, the process of parcelling out news is not manageable for the courts. One order may not successfully define what can be reported. Rather, the courts will be bound to the task of deciding, question by question and answer by answer, whether the subject matter can be reported.

Despite our reservations about the difficulties inherent in the compromise reached by the trial court, our task is to analyze the trial court's restrictive order under existing case law and statutory authority. Minnesota statutes specifically authorize the courts to exclude members of the public from parts of a trial involving sexual misconduct against a juvenile, if "necessary to protect a witness." Minn.Stat. § 631.045 (1992). "Minnesota case law also authorizes trial courts to close courtrooms during the testimony of minor victims regarding sex crimes committed against them." *State v. McRae,* 494 N.W.2d 252, 258 (Minn.1992).

■ Any restrictive order limiting access to a criminal trial must reflect proper deference to the constitutional presumption of access, and the trial court must articulate, in its findings and on the record, the compelling governmental interest served by the restriction. *Richmond,* 448 U.S. at 581, 100 S.Ct. at 2829–30. If the record does not include findings that closure is necessary to protect the witnesses, a restrictive order is invalid. *McRae,* 494 N.W.2d at 259.

■ "[S]afeguarding the physical and psychological well-being" of juvenile victims of sex crimes is a compelling governmental interest, although that interest does not justify blanket restrictions on access to trials involving juvenile victims. *Globe,* 457 U.S. at 607–08, 102 S.Ct. at 2620–21. The trial court must evaluate the circumstances of the particular case, including the age, psychological maturity, understanding, and desires of the juvenile, the nature of the crime, and the interests of parents and relatives. *Id.* at 608, 102 S.Ct. at 2621.

Unlike the Massachusetts statute reviewed in *Globe,* which mandated closure of all criminal trials involving juvenile victims of sex offenses, the Minnesota statute contemplates individualized review as a prerequisite to an order restricting access. *See* Minn.Stat. § 631.045 (court may exclude public). In this case, the trial court made specific findings that the juvenile victims would suffer embarrassment and fright and would be traumatized further if required to testify "before a public forum." *See State v. Schmit,* 273 Minn. 78, 82, 139 N.W.2d 800, 804 (1966) (temporary exclusion of the public from criminal trials permissible if juveniles would be unable to testify competently and coherently because of fright or embarrassment). The trial court properly focused on "the incremental injury" that would be caused by testifying in public, as distinguished from the effect of confronting the defendant and the trauma inherent in testifying about personal matters. *See Globe,* 457 U.S. at 607 n. 19, 102 S.Ct. at 2620 n. 19 (incremental injury is proper measure of governmental interest). Neither the defendant in the criminal trial nor the media representatives have challenged those findings. *Compare McRae,* 494 N.W.2d at 258 (defendant objected to closure and challenged sufficiency of evidence to support findings).

■ The trial court also focused upon the need to preserve the confidentiality of juvenile records. The court ruled that the defendant will be given wide latitude during cross-examination to inquire into the juveniles' prior contacts with the juvenile court system, and the propriety of that ruling is not before us. The cross-examination may result in dis-

closure of information that is not generally accessible to the public. *See* Minn.Stat. § 260.161, subd. 2 (1992) (juvenile records are not accessible to the public). The state's interest in protecting the confidentiality of juvenile records and proceedings, while not unlimited, is "important and substantial." *Minneapolis Star & Tribune Co. v. Lee,* 353 N.W.2d 213, 215 (Minn.App.1984). Coupled with the compelling governmental interest in safeguarding the physical and psychological well-being of juvenile witnesses, this interest supports the decision to limit access.

The media's own internal policies support our conclusion, because those policies prohibit publication of the names of juvenile victims and witnesses. Further, the media representatives initially expressed their willingness to withhold the names of juveniles, and suggested that alternative to the trial court. Agreements to refrain from publishing the names of juveniles may persuade courts to afford media access to hearings that are otherwise closed to the public. *In re Welfare of R.L.K.,* 269 N.W.2d 367, 371 (Minn.1978) (affirming order allowing reporter to attend juvenile hearing). The trial court properly imposed this condition when affording access to the media greater than that afforded to the general public. *See Pell,* 417 U.S. at 833–34, 94 S.Ct. at 2810 (media have no constitutional right of special access to information not available to general public and reasonable restrictions on access are permissible).

In this case, media representatives could choose to abide by the conditions imposed by the trial court and observe the testimony of juveniles, or to reject those conditions and be excluded, along with the public, from some parts of the trial. Pursuant to the terms of the court order, if the media representatives choose to attend, they are free to report the testimony of the juveniles insofar as it does not relate to previous juvenile records. If they choose not to attend, they are free to report what they observe in the courtroom during other parts of the trial. In either case, they are not restrained from reporting information they obtain from other lawful sources.

It is evident that the trial court approached this issue with open lines of communication to media representatives; interaction between the court and the media seems cooperative, even amiable. But this litigation shows the potential for conflict between the judiciary and the media. Under different circumstances, the conflict could be much worse. If disagreements occur about media reports, how will the court resolve them? How will the court determine whether apparently improper reports are based on sources independent of testimony at hearings closed to the public? Will the court employ contempt proceedings? The specter of enforcement proceedings against the media is a prime reason why our laws severely limit the power of the court to employ gag orders. Our conclusion that access in this case was properly restricted to media representatives who agreed to forego publication of the names of juveniles and confidential matters related to previous juvenile court proceedings should not be construed as encouraging courts to permit partial media access in other cases.

**Petition for writ of prohibition denied.**